# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Ray-mond Young (#N-32634), | ) |
| Plaintiff, | ) |
| | ) No. 10 C 8220 |
| v. | ) |
| | ) Hon. Rebecca R. Pallmeyer |
| Wexford Health Sources, Kevin Halloran, Partha Ghosh, Dr. Zhang, Cynthia Harris, and Marcus Hardy, | ) |
| Defendants. | ) |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff, a state prisoner, has brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants, administrative officials and health care providers at the Stateville Correctional Center, have violated Plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. Specifically, Plaintiff alleges that Defendants failed to provide effective care and treatment for his chronic pancreatitis and other gastro-intestinal issues. Defendants have filed motions to dismiss and, for the reasons stated in this order, the motions are denied.

## FACTS

Plaintiff is an Illinois state prisoner, confined at the Stateville Correctional Center at all times relevant to this action. (Compl. at 2.) Defendant Marcus Hardy is Stateville's warden. (*Id.* at 4.) Defendant Cynthia Harris is a correctional counselor. (*Id.* at 3.) Defendants Partha Ghosh and Liping Zhang (both now retired) were staff physicians at Stateville at all relevant times. (*Id.* at 2-3.) Dr. Ghosh was also the Medical Director at Stateville at all relevant times. (*Id.* at 3.) Defendant Kevin Halloran is the CEO of Defendant Wexford Health Sources, Inc ("Wexford"), Stateville's medical contractor. (*Id.* at 2.)

According to Plaintiff's allegations, presumed true for purposes of this motion, he has been complaining of chronic pain in his chest and side since 2007. (*Id.* at 8.) The pain has fluctuated from "everyday" low levels of pain, to sharper pain, to excruciating pain. (*Id.*) Stateville physicians have seen the plaintiff "a few times" over the past three years. (*Id.*) Defendants Ghosh and Zhang provided Plaintiff with Maalox and pain medication, but they did not definitively diagnose the medical problem causing the pain, and the pain medications have been wholly ineffective. (*Id.* at 8-9.)

In 2009, Plaintiff was told (he does not say by whom) that the only pain medications stronger than those he was already taking would require him to be confined to the health care unit because narcotics cannot be prescribed to inmates in the general population. (*Id.*) Plaintiff wrote many letters to Defendants Ghosh and Zhang advising them of his willingness to be admitted to the health care unit; the doctors neither answered any of this correspondence nor scheduled an appointment to see him. (*Id.* at 9, 11.) Plaintiff also wrote to Wexford and its chief executive officer, Defendant Halloran, requesting assistance, but he received no responses to those letters, either. (*Id.* at 10, 21.)

Blood tests performed on June 4, 2009, revealed that Plaintiff's amylase count was higher than the generally accepted range, but doctors did not discussed these high readings with Plaintiff until May 14, 2010. (*Id.* at 12-13.) (Amylase is an enzyme secreted by the pancreas that breaks down starch, helping the body to digest food. *See Dorland's Illustrated Medical Dictionary* 69, 1366-67 (32d ed. 2012).) Plaintiff also continues to cough up blood and to find blood in his stool. (*Id.* at 17.) Doctors have never explained why Plaintiff is experiencing these symptoms. (*Id.*)

Eventually, Plaintiff was diagnosed with chronic pancreatitis on May 14, 2010—he does not specify by whom. (*Id.* at 15.) Although Plaintiff is occasionally scheduled for visits to the

health care unit, he is not seen by doctors with any regularity, he has never been sent to an outside specialist, the treatment provided has been completely ineffective in terms of both pain management and recovery, and medical personnel have never had any meaningful conversations with Plaintiff about his health condition and progress. (*Id.* at 16-17.) On occasion, scheduled medical appointments have been cancelled due to lockdowns and/or missing paperwork. (*Id.* at 19, 20.)

Plaintiff's letters to the warden have been ignored, and Plaintiff's counselor, Defendant Harris, has similarly refused to take any action on his behalf. (*Id.*) Plaintiff filed emergency medical grievances on October 22, 2009 and December 11, 2009; Harris did not "sign off" on those grievances until November 7, 2009 and January 13, 2010, respectively. (*Id.* at 17-18.) Warden Hardy denied both grievances, explaining that he did not believe that either of them presented a medical emergency. (*Id.* at 18-19.) Plaintiff went six months without being seen by medical staff for his medical complaints, from October 2009 to April 2010. (*Id.* at 20.)

## **DISCUSSION**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1983, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A well-pleaded complaint may proceed even if it appears "that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. Even after *Twombly*, however, courts "construe pro se complaints liberally and hold them to a less stringent standard than formal

3

pleadings drafted by lawyers." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Obriecht v. Raemisch*, 517 F.3d 489, 492 n.2 (7th Cir. 2008)). The court assumes the truth of Plaintiff's factual allegations and construes the facts, and any reasonable inferences, in the light most favorable to him. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

In their motions to dismiss, Defendants advance several reasons why Plaintiff's suit cannot proceed against particular Defendants. Dr. Zhang contends that Plaintiff's disagreement with a medical professional does not state a cognizable § 1983 deliberate indifference claim. Warden Hardy and Counselor Harris likewise contend that Plaintiff has no deliberate indifference claim against them, and additionally argue that Plaintiff has no constitutional right to the grievance process and has not established a claim for retaliation. Defendant Wexford contends that Plaintiff has failed to allege an unconstitutional policy or custom necessary to hold a corporation liable for deliberate indifference. Finally, Dr. Ghosh moves to dismiss the complaint against him, arguing that Plaintiff failed to exhaust his administrative remedies because Plaintiff did not specifically name Dr. Ghosh in his grievance. Accepting Plaintiff's allegations as true, the court concludes that his complaint states viable claims of deliberate indifference on the part of all movants, and that Plaintiff has exhausted his administrative remedies. Accordingly, Defendants' motions to dismiss are denied in part and granted in part. The court addresses the arguments made by Defendants' motions to dismiss in turn.

**I.     Dr. Zhang**

Plaintiff has articulated a cognizable Eighth Amendment claim against Dr. Zhang. Correctional officials and health care providers may not act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002). Deliberate indifference has both an objective

and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Walker*, 293 F.3d at 1037.

To satisfy the objective element, Plaintiff must suffer from a "serious medical condition": "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) (quoting *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002)). A condition is also objectively serious "where 'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'" *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

In the case at bar, Defendants do not contest Plaintiff's assertion that his chronic pancreatitis constitutes a serious medical need. Plaintiff describes habitual—sometimes acute—pain, and he alleges that he coughs up blood and finds blood in his stool. Other courts have concluded that pancreatitis is a condition serious enough to meet *Farmer*'s objective component. *See, e.g.*, *Horn v. Bay Cnty. Sheriff's Dept.*, No. 07-10116, 2008 WL 3285808, at *5 (E.D. Mich. Aug. 7, 2008) (concluding that pancreatitis constituted a "sufficiently serious" medical condition); *Ramos v. DeTellaI*, No. 95 C 5308, 1998 WL 704352, at *3 (N.D. Ill. Sept. 24, 1998) (evidence that the prisoner "was diagnosed with acute pancreatitis that is chronic and can create intermittent severe pain" indicated that the prisoner "suffered from a serious medical need"). The court is satisfied that Plaintiff's condition meets the objective standard.

To satisfy the subjective component, a prisoner must demonstrate that the defendant in question was aware of and consciously disregarded the inmate's serious medical need. *Farmer*, 511 U.S. at 837; *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). "The fact that a prisoner received *some* medical treatment does not necessarily defeat his claim; deliberate indifference

5

to a serious medical need can be manifested by 'blatantly inappropriate' treatment, or by 'woefully inadequate action' as well as by no action at all." *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 WL 2463544, at *1 (N.D. Ill. Jun. 17, 2011) (citations omitted) (quoting *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005); *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999)). The subjective component encompasses conduct such as the refusal to treat a prisoner's chronic pain, *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999), or erroneous treatment constituting a substantial departure from accepted medical judgment, practice, or standards. *Gayton v. McCoy*, 593 F.3d 610, 623 (7th Cir. 2010).

Plaintiff contends that Zhang "did equivalent to nothing" (Answer to Def. Zhang's Mot. to Dismiss [54] ¶ 5); that her care was "like putting stitches in a stab wound" (*id.* ¶ 6); that she refused to prescribe effective pain medication (Compl. at 9); and that he has gone long periods of time without being seen by her (or by any health care professionals) despite his severe symptoms. (*Id.* at 16-17.) All of these factual allegations support an inference of deliberate indifference. *Cf. Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (recognizing that "hours of needless suffering" can constitute compensable harm); *Greeno*, 414 F.3d at 655 (finding that summary judgment was not warranted where, despite inmate's deteriorating condition, prison doctor "doggedly persisted in a course of treatment known to be ineffective").

Defendant Zhang is correct that neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106). The Constitution does not prescribe any specific course of treatment. *See Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) ("There is not one 'proper' way to practice medicine in a prison but rather a range of acceptable courses based on prevailing standards in the field."). Moreover, an inability to effect a final cure does not by itself establish deliberate indifference. *Lieberman v. Budz*, No. 00 C

5662, 2010 WL 3522998, at *1 (N.D. Ill. Sept. 2, 2010) (citing *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996)). Plaintiff has not alleged that Dr. Zhang was merely ineffective, however; instead, he claims that Dr. Zhang all but ignored his symptoms for an extended period. These allegations are sufficient to state a claim under 42 U.S.C. § 1983. Accordingly, Defendant Zhang's motion to dismiss is denied.

## II. Warden Hardy and Counselor Harris

Plaintiff has articulated a tenable Eighth Amendment claim against Warden Hardy and Counselor Harris, as well. As the court reads Plaintiff's complaint, Plaintiff alleges that Hardy and Harris were deliberate indifferent to his serious medical condition; delayed, ignored, and ultimately rejected his grievances concerning his medical treatment; and retaliated against him for filing the grievances by denying medical care. As explained below, Plaintiff has no separate cause of action either for denial of his grievances or for retaliation. The complaint does, however, support an inference that Hardy and Harris acted with deliberate indifference to his serious medical needs.

### A. No Cause of Action Based on Non-Satisfactory Resolution of Grievances

Illinois' statutory grievance procedures do not create a protected interest. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Any right to a grievance is a procedural one, not substantive. *Id.* Defendants' failure to rule favorably on a prison grievance is therefore not actionable under Section 1983.

Plaintiff's repeated filing of grievances is nevertheless relevant, however. Though a prison official has no substantive constitutional duty to respond to grievances, he or she does have a duty to prevent and remedy known constitutional violations within his supervision and control. A prison official may therefore be liable under 42 U.S.C. § 1983 for failing to respond

7

to violations of a prisoner's constitutional rights that come to his or her attention via the grievance process. *See Reed*, 178 F.3d at 852; *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996).

### B. Complaint Suggests Deliberate Indifference on the Part of Administrators

As noted *supra,* correctional officials, like health care providers, may not act with deliberate indifference to an inmate's serious medical needs. *Estelle*, 429 U.S. at 104; *Walker*, 293 F.3d at 1037. It is well-established that the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983, *see, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008), but there is substantial authority, as well, recognizing that a supervisor may not "turn a blind eye" to constitutional violations. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Defendants Hardy and Harris argue that because Plaintiff is being seen by medical professionals, they have properly relied on the health care staff to assess Plaintiff's needs and to provide appropriate care and treatment. A warden is indeed generally shielded from liability where a plaintiff is receiving ongoing care from health care professionals. *Compare Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability), *and Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006) (warden that "reasonably relied on the expertise of the medical professionals . . . did not act with deliberate indifference"), *with Reed*, 178 F.3d at 854-56 (warden was required to act where *prison officials* allegedly denied an inmate life-sustaining medication and food). "The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

8

In this case, however, Plaintiff contends that he is not being seen by health care providers with any regularity and that, at least at the time he filed suit, his medical condition—as well as the bleeding and severe chronic pain associated with that ailment—went largely undiagnosed and "virtually untreated." Plaintiff alleges that because Warden Hardy denied his emergency medical grievances, as well as appointment cancellations due to lockdowns and missing paperwork, Plaintiff went unseen by medical staff for six months. Where, as here, Plaintiff informed correctional officials that he was being denied access to the health care unit, those officials may be liable under 42 U.S.C. § 1983 for their purported inaction. *See Estelle*, 429 U.S. at 104-05 (holding that deliberate indifference to medical needs violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to their prisoner's needs or by prison guards in intentionally denying or delaying access to medical care . . . ." (footnotes omitted)); *Reed v. Indiana Dept. of Corr.*, 30 F. App'x 616, 618 (7th Cir. 2002) ("[Eighth Amendment] protection includes situations where prisoners are denied access to necessary medical care, or where officials excessively delay access to such care."). Plaintiff's Eighth Amendment claims against Defendants Hardy and Harris will proceed.

### C. No Separate Cause of Action for Retaliation

Plaintiff also labels Hardy's and Harris' alleged inaction as "retaliatory" in nature, but the court concludes that his allegations are insufficient to state a claim for retaliation.

It is well established that "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution," *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), and Plaintiff's grievances are protected by the First Amendment. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (grievances may be constitutionally protected speech under the speech and petition clauses of the First Amendment). A prisoner is entitled to take advantage of grievance procedures without fear of recrimination, and if a prison official retaliates against the

9

prisoner for making nonfrivolous claims, the official violates the inmate's First Amendment rights. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Hasan v. U.S. Dept. of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

As this court reads his allegations, however, Plaintiff has not alleged any punitive action in response to his grievances; he asserts only that Defendants failed to honor his requests for medical attention. Inaction on a grievance is not the same as retaliatory action. Plaintiff's allegations are insufficient to support an independent cause of action for retaliation in light of his failure to allege any adverse actions taken against him as a result of his grievances.

### III. Wexford Health Sources

Plaintiff's complaint also alleges facts to support a plausible claim against Wexford for a policy of denying medical care to inmates as a cost-saving device. "A 'private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.'" *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d at 766 (quoting *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). A private corporation may nevertheless be liable under "principles applied in examining claims against a municipality." *Brown v. Ghosh*, No. 09 CV 02542, 2010 WL 3893939, at *8 (N.D. Ill. Sept. 28, 2010) (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009)). Specifically, a prisoner must show that "the corporation supports a 'policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of the prisoners.'" *Id.* at *8 (quoting *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004)). Because this theory of liability is not premised on *respondeat superior*, "the corporate policy 'must be the "direct cause" or "moving force" behind the constitutional violation.'" *Id.* (quoting *Woodward*, 368 F.3d at 927.)

In the case at bar, as in *Brown*, Plaintiff contends that Wexford Health has a policy of denying medical care and treatment to inmates at Stateville as a cost-saving device. In his

complaint, Plaintiff alleged that he was "deprive[d] . . . of needed medical treatment for his serious medical issues" as a result of "cost cutting procedures commonly practiced here at Stateville by the Wexford Health Sources Inc. doctors." (Compl. at 14.) In response to the motion to dismiss,[1] he has further elaborated that "he couldn't get a second opinion, which is the direct policy of Wexford" (Pl.'s Answer to Wexford's Mot. to Dismiss [56] ¶ 3); "It takes several months for Wexford to approve . . . any procedure that the institution isn't able to perform and that is a policy" (*id.*); "Defendants created an unwritten policy of purposely having Plaintiff and other inmates waiting for procedures that they needed to see what was wrong with them" (*id.* ¶ 4); and "The policy is this: patient see[s] the doctor, the doctor recommends an MRI, its [sic] approved by the Medical Director & then it has to be approved by the Wexford Administrative Office or Officer . . . because they are in the business of making money first . . . ." (*id.* ¶ 5).

These factual allegations describe an allegedly unconstitutional policy on the part of Wexford—namely, denying needed medical care out of budgetary concerns, which infringed upon Plaintiff's Eighth Amendment rights. Where, as here, a corporate entity such as Wexford is alleged to maintain a policy sanctioning the denial of needed medical care, the entity may be liable for violating an inmate's constitutional rights. *See, e.g.*, *McDonald v. Wexford Health Sources*, No. 09 C 4196, 2010 WL 3034529, at *3 (N.D. Ill. July 30, 2010) (denying Wexford 's motion to dismiss where the plaintiff alleged a similar policy); *Fox v. Ghosh*, No. 09 C 5453, 2010 WL 345899, at *3-4 (N.D. Ill. Jan. 26, 2010) (same). *But cf. Bond v. Cullinan*, 90 F. App'x 164, 167-68 (7th Cir. 2004) (affirming dismissal where prisoner alleged only that Wexford negligently supervised its physician employees). The court concludes that Plaintiff's allegations regarding

---

[1] As a general rule, a plaintiff may assert additional facts in his response to a motion to dismiss, so long as the new allegations are consistent with the original pleading. *See, e.g., Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1006 (7th Cir. 2000); *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

11

Wexford Health are sufficient for purposes of Federal Rule of Civil Procedure 8(a) to state a tenable claim. Consequently, Defendant Wexford's motion to dismiss is denied.

**IV.    Wexford CEO Kevin Halloran**

The record will require further development concerning the personal involvement of Wexford executive Kevin Halloran. Like the corporation itself, an individual who represents the corporation may be held liable for violations of an inmate's constitutional rights. *See generally Woodward,* 368 F.3d at 919 (noting that a jury found a private contractor and its social worker liable for deliberate indifference to a prisoner's health and safety). For pleading purposes, Plaintiff in this case has articulated both the objective and subjective elements of a deliberate indifference claim against Halloran. Plaintiff contends that he had an objectively serious medical condition (painful symptoms associated with chronic pancreatitis) and that Halloran, who was in a position to intervene, was subjectively aware of and consciously disregarded that medical need (ignoring Plaintiff's multiple letters pleading for assistance). *Cf. Thomas v. Ghosh*, No. 08 C 4644, 2009 WL 910183, at *5 (N.D. Ill. Mar. 31, 2009) (denying a motion to dismiss Halloran for "lack of direct, personal involvement . . . without prejudice to filing a properly supported motion for summary judgment").

Halloran asserts in his brief that he is a corporate officer, not a health care provider. The court recognizes that further factual development may establish that he played no role in the individual decisions about Plaintiff's treatment or in establishing the alleged policy of refusing to provide needed care. That said, Halloran's medical experience (or lack thereof), his participation in daily health care decisions, his supervision of prison physicians, and his role in implementing Wexford policies and practices are all matters for summary judgment. The court will not speculate as to either whether Halloran actually received Plaintiff's letters or whether he took any action–for example, relaying Plaintiff's concerns to a more appropriate party. At this stage of the

proceedings and on the facts alleged here, Plaintiff's charge that he repeatedly wrote to Halloran and received no response is sufficient to survive a motion to dismiss.

**V.     Dr. Ghosh**

Finally, Defendant Ghosh, Stateville's former medical director, moves for dismissal on the basis that Plaintiff never filed a grievance against him personally and therefore Plaintiff has not exhausted his administrative remedies. Because exhaustion is an affirmative defense, the burden of proof on this issue rests with Dr. Ghosh. *See Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

The Prison Litigation Reform Act of 1996 ("PLRA") contains a comprehensive administrative exhaustion requirement, *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000), providing that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim" under Section 1983. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999). A major purpose of the exhaustion requirement is to give prison administrators prompt notice of problems, so that they may be corrected internally in the first instance and an administrative record developed prior to suit. *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). In order to exhaust, a prisoner "must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). An inmate must comply with the rules established by the State with respect to the form and timeliness of grievances. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (barring a prisoner who failed to avail himself of the administrative grievance process in a timely manner from pursuing relief in federal court).

13

The Illinois Administrative Code, as amended by 27 Ill. Reg. 6214, 6285 (May 1, 2003), provides that prisoner grievances

> shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

ILL. ADMIN. CODE § 504.810(b). Prior to this amendment, the "administrative rulebook [was] silent" as to the grievance's contents, leading the Seventh Circuit to conclude that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . All the grievance need do is object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). The court likened this requirement to the notice pleading standard, under which (at the time of the *Strong* court's pre-*Twombly* analysis) "the grievant need not lay out the facts, articulate legal theories, or demand particular relief." *Id.* Under this standard, a number of courts concluded that exhaustion did not require that the prisoner have named each defendant in his or her grievance to satisfy exhaustion. *See Turley v. Catchings*, No. 03 C 8491, 2004 WL 2092008, at *3 (N.D. Ill. Sept. 15, 2004) ("Plaintiff need not specify by name each person against whom he addresses his grievance.");[2] *Murray v. Artz*, No. 02 C 8407, 2002 WL 31906464, at *4 (N.D. Ill. Dec. 31, 2002) ("Read literally, [*Strong*] does not require a prisoner to have named a prospective defendant in his grievance, even if the prospective defendant was known to the prisoner when the grievance was written.").

The 2003 amendment to the Illinois grievance procedures calls into question *Strong* and its progeny, which are predicated on the administrative rulebook's silence. The amended

---

[2] Although *Turley* was decided on September 15, 2004, the court notes from its own review that the prisoner in that case had filed his grievance on October 25, 2002, well before the rule change went into effect. *See* Grievance Form, Ex. to Compl. [1], *Turley v. Catchings,* No. 03 C 8491.

regulation—which requires grievants to include "what happened, when, where, and the name of each person"—appears to require fact pleading similar to the requirements of heightened pleading for fraud. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (explaining that to plead fraud, "a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story'" (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849,854 (7th Cir. 2009))).

The Seventh Circuit has noted this regulatory change in *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011). In *Maddox*, a prisoner brought a § 1983 suit against prison officials challenging the prison's 2004 decision to discontinue religious services for members of the African Hebrew Israelite faith. *Id.* at 712. The defendants argued that the prisoner had "failed to exhaust his administrative remedies because he did not name the defendants or describe them in his grievance." *Id.* at 721. Although the grievance was made after the amendment to the grievance regulations, the prisoner "filed his grievance on a prison form dated 2001 and the form only asked for a 'Brief Summary of Grievance'; there was no indication on the form that names had to be provided." *Id.* At no point during the three-stage grievance process—filing of the grievance, denial by the prison, and appeal to the grievance officer and department of prisons' director—did anyone inform the prisoner that his grievance was incomplete or procedurally deficient. *Id.* at 712.

In those circumstances, the Seventh Circuit concluded that the prisoner had satisfied the exhaustion requirements even though his grievance did not identify the prospective defendants. *Id.* at 721-22. The court held that "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust

15

defense." *Id.* at 722 (citing *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005); *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004)). Significantly, the court pointed out that "providing early notice to those who might later be sued has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Moreover, the court concluded, it "belies reason to suggest that prison administrators . . . were unaware of who was responsible for" the decision to cancel the religious services. *Id.* The court characterized the prisoner's failure to name each prospective defendant in the grievance as "a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Id.*

Plaintiff complaint alleges that he filed grievances concerning perceived deficiencies in his medical care, that the grievances were denied by Defendant Harris, that they were then denied by the grievance officer, and that he appealed the denials to the Illinois Department of Corrections. (Compl. at 5.) Neither Plaintiff nor Defendants have submitted copies of any of the grievances Plaintiff mentions in his complaint. The only evidence in the record is a letter denying an appeal of a grievance on the merits, without mentioning any procedural defects. (Letter from Jackie Miller and Michael P. Randle to Raymond Young of 9/7/2010, Ex. A to Def. Ghosh's Mot. to Dismiss.)[3] In a brief summary of Plaintiff's grievance, the letter mentions only Dr. Zhang,[4] and explains:

---

[3] The letter appears to interpret Plaintiff's grievance as a request for a different doctor; the only reason the officials gave for denying the grievance on appeal was, "You may not request a particular medical professional." *Id.*

[4] If Zhang was the only Defendant mentioned in Plaintiff's grievance form and Ghosh is correct that exhaustion requires a prisoner to name every prospective defendant in his or her grievance, then presumably Plaintiff did not exhaust his administrative remedies against any of the defendants besides Zhang. Notably, Defendants Halloran, Harris, Hardy, and Wexford do not raise an exhaustion defense in their motions to dismiss.

> In the grievance you state that you were seen by Dr. Zhang Liping for pancreatitis and coughing up blood on 6/11/10. You state that when she asked you what medication you wanted her to prescribe, you replied that she was the Dr. and she should tell you. You then allege that the Dr. got upset and asked you to leave.

(Id.) Even if the grievance did not specifically mention Ghosh, such a deficiency is a "mere technical defect" because the grievance, as described in the letter, appears to have provided the prison sufficient opportunity to address Plaintiff's complaint about inadequate medical treatment.[5]

Furthermore, the court is unwilling to dismiss Plaintiff's suit for lack of exhaustion when Plaintiff's grievance form is not in the record. Several cases have noted that grievance procedures sometimes depart from what is set forth in the Illinois Administrative Code, in which case the prison's informal procedures prevail. *See Maddox*, 655 F.3d at 722 (noting that the court's holding was "particularly appropriate in this case where the form provided by the prison didn't request inmates to provide the name of the person subject to the complaint"); *Curtis v. Timberlake*, 436 F.3d 709, 712 (7th Cir. 2005) (prisoner did not fail to exhaust by hand-delivering his grievance; though the written grievance procedures directed that the grievance be dropped into a lock box, it was the prison's "actual practice" to allow prisoners to deliver complaints directly to the official); *Miller v. Mahone*, No. 11-1150, 2011 WL 5508976, at *3 (C.D. Ill. Nov. 10, 2011) (rejecting an exhaustion defense where the prison used the same 2001 grievance form as the form at issue in *Maddox*); *Reyes v. Ramos*, No. 07-541-DRH, 2010 WL 1241621, at *3 (S.D. Ill. Mar. 23, 2010) (finding exhaustion satisfied, even though the prisoner did not name the defendant, where the prisoner followed the procedures as listed in the inmate orientation

---

[5] To the extent that early notice to prospective defendants is a legitimate concern, in the court's experience with prisoner civil rights actions involving medical issues, grievances are usually routed to the health care unit administrator for resolution. Even if Plaintiff's grievance in this instance was not forwarded to Dr. Ghosh, the record shows Plaintiff did specifically write letters to Ghosh regarding the problems he was experiencing.

manual).  Without the original grievance form, the court cannot determine who Plaintiff named in the grievance or whether the grievance form informed Plaintiff of the procedural requirements.

Defendant Ghosh has failed to satisfy his burden of proving his exhaustion defense at this stage.  According, Ghosh's motion to dismiss is denied without prejudice to the filing of a properly supported motion for summary judgment.

## CONCLUSION

Without formally deciding whether Plaintiff's medical condition is "serious" for purposes of Eighth Amendment analysis, or whether the medical care he has received is constitutionally adequate, the court concludes at this stage that Plaintiff has alleged sufficient facts to proceed against the Defendants.  Defendants' motions to dismiss the complaint for failure to state a claim [19], [43], [45], [55] and for failure to exhaust administrative remedies [33] are denied.  Plaintiff's motion to respond to the motions to dismiss [32] is granted.  Defendants are directed to answer the complaint or otherwise plead within twenty-one days of the date of this order.

ENTER:

Dated:  February 14, 2012

REBECCA R. PALLMEYER
United States District Judge