UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| RAYMOND YOUNG,<br>    Plaintiff,<br><br>-Vs.-<br><br>WEXFORD HEALTH<br>SERVICES, et al.,<br>    Defendants. | No. 10-C-8220<br>HON. REBECCA R. PALLMEYER<br>Judge Presiding<br><br><br>HON. MICHAEL T. MASON<br>Magistrate Judge |
| RAYMOND YOUNG,<br>    Plaintiff,<br><br>-Vs.-<br><br>MARCUS HARDY, et al.,<br>    Defendants. | No. 12-C-5591<br>HON. REBECCA R. PALLMEYER<br>Judge Presiding<br><br><br>HON. MICHAEL T. MASON<br>Magistrate Judge |

## NOTICE OF FILING

To: The Clerk Of the
U.S. District Court

PLEASE TAKE NOTICE, that on the __16__ day of __DEC.__, 2014, I caused to be filed with the Clerk of the U.S. District Court Plaintiff's motion for relief from judgment or order.

/s/ Raymond Young
RAYMOND YOUNG

## CERTIFICATE OF SERVICE

I, Pro Se. Plaintiff Raymond Young, do hereby certify that I have caused to be served on the above-named party(ies) the afore-mentioned documents by placing same in the U.S. Mail via the Insti-tutional Mail here at the Henry Hill C.C. with Postage being pre-paid on the __16__ day of __DEC.__, 2014.

/s/ Raymond Young
RAYMOND YOUNG

I SWARE UNDER PENALTY OF PERJURY
that the above cited statements
are true and correct to the best
of my knowledge and belief.

/s/ Raymond Young
RAYMOND YOUNG

[1]

IN THE
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS, EASTERN DIVISION

FILED
JAN 05, 2015
JAN 05 2015
THOMAS G. BRUTON
CLERK U.S. DISTRICT COURT

RAYMOND YOUNG,
    Plaintiff,

  -Vs.-

WEXFORD HEALTH
SERVICES, et al.,
    Defendants.

No. 10-C-8220

HON. REBECCA R. PALLMEYER
Judge Presiding

Magistrate Judge MICHAEL MASON

RAYMOND YOUNG,
    Plaintiff,

  -Vs.-

MARCUS HARDY, et al.,
    Defenfants.

No. 12-C-5591

HON. REBECCA R. PALLMEYER
Judge Presiding

Magistrate Judge MICHAEL MASON

## MOTION REQUESTING RELIEF FROM JUDGMENT
### OR ORDER

    NOW COME'S RAYMOND YOUNG Plaintiff-Pro Se., and respectfully move this Honorable Court/U.S. District Court for the Northern Dis-trict Of Illinois pursuant to the Federal Rules Of Civil Procedure [Rule 12(g)] in-consolidation of defenses as same relates to [Rule(s) 61(b) & 60(b)] concerning Plaintiff's request to stay the present proceedings in-lure of having said settlement agreement and general release [under the above-mentioned cases; No.'s 10-C-8220 & 12-C-5591] either modified and or terminated. In support thereof Plaintiff states the following:

    A motion for relief from judgment pursuant to Fed,R.Civ.P. 60(b) permits a party to seek relief from judgment on the grounds of mistake, inadvertence, excusable neglect, newlydiscovered evid-ence and fraud. (American Federation Of Grain Millers, Local 24 Vs. Cargill Inc. 15 F.3d 726,728(7th Cir.1994)

    Originally, Plaintiff Raymond Young, a Pro Se. Prisoner filed two separate lawsuits in the U.S. District Court for the Northern Disterict Of Illinois,Eastern Division, entitled: Young V. Wexford, et al., Case No. 10-C-8220, alleging violations of rights protected by statute(s), regulation(s), the common Law, and the Illinois State as well as U.S./United States Constitution(s); and, Young V. Hardy, et al., Case No. 12-C-5591, alleging violations of rights protected by statute(s), regulation(s), the common law, and the Illinois State as well as U.S./United States Constitution(s). Collectively, the aforementioned lawsuit(s) were infact combined under the "settlem-ent agreement and general release" which is the basis for Plaintiffs motion requesting relief from judgment or order and presently before this Court.

[2]

I. TO SHOW CAUSE

    1. The PLRA provides that settlements which include prosepc-tive relief must meet the same requirements that the PLRA establ-ishes for other Court Orders. The Court must find that these sett-ements are narrowly drawn, necessary to "Correct Federal Law Vio-lations" and the least intrusive way of doing so. In practice, parties who are settling often agree to these findings and the Court approves them. It is no longer the case that parties can agree to Federal Court Settlement on whatever termsthey choose. Parties can enter into "private settlement agreements" that do not meet the PLRA standards, but, these agreements cannot be enforced in Federal Court. In effect, they must be contracts enforceable in State Court.

    Moreover, the PLRA provides that an order may be challenged at any time if it was entered without findings by the Court that it "is narrowly drawn, extends no further than necessary to correct the violation of Federal Right(s), and is the least intrusive means necessary to correct the violation of Federal Right(s). Therefore, as Plaintiff Young is currently faced with ongoing violation(s) of his Federal Constitutional Right's [the fact that this Plaintiff's very life is in jeopardy due to the Illinois Department Of Correc-tions/Wexford Health Servicesnot providing him with the required and necessary medical treatment(s)] at the very least, the present settlement agreement must be modified. And or in the alternative same must be terminated, especially since said settlement agreement has'nt officially came came into affect before the filing of this self-same motion requesting relief from judgment or order.

    2. Pursuant to Case No. 10-C-8220 & 12-C-5591 [both] were filed Pro Se. by Plaintiff Young. In good faith and with the best of intentions the Hon. Judge Rebecca R. Pallmeyer appointed attorn-eys "Marc R. Kadish & Ari Cohn" from the law firm of Mayer & Brown LLP [71 South Wacker Drive, Chicago, Il. 60606-4637] to represent Plaintiff. (Before the settlement agreement was reached attorney Ari Cohn left the firm, shortly thereafter attorney Kathleen M. Przwara filed her appearence on Plaintiffs behalf.)

    With the exception of "Ari Cohn" who left the firm earily on before the settlement inquestion was agreed to, the remaining att-orneys [Marc R. Kadish, and, Kathleen M. Przwara] failed miserably when representing Plaintiff Young's interest pursuant to the settle-ment agreement which is now being made an issue before, in this the court motion. This Plaintiffs interest were not protected by these atto-rneys pre-settlement, during the structuring of said settlement agreement, nor post-settlement agreement. Please, understand, Pla-intiff filed the medical law suit not only because of his not rece-iving adequate medical treatment; pain and suffering over an extend-ed period of time; but even more importantly whereas he'd be sure to receive the adequate medical treatment he so desperately-present-ly needed [well as follow-up treatment for those self-same medical conditions in the future].

[3]

Whats simply amazing, absolutely mind-boggling to me is,,, given the level of Constitutional Violations that exist in not one but both cases, and especially [in the medical case whereas this Plai-ntiff has suffered and continues to suffer from any number of [untreated, over an extended period of time] serious medical cond-itions "how is it that trained seasoned attorneys would come to the conclusion to settle [not one but two separate cases] under the type of agreement which is presently setforth"??? Without ques-tion, this conduct far exceeds the bounds of "**ineffective assistance of counsel**" and readily spills over into the realm of inadvertence, mistake, excusable neglect, and or fraud [fraud in the inducement, in-relation to having Plaintiff except and enter into the settlement agreement]. Concerning the case Young v. Hardy, No. 12-C-5591, Judge Pallmeyer on more than one occasion specifically advised the Defendants attorneys to settle the case. In essence, her advisements came in the form of informing the Defendants that if they were to proceed to trial they would lose. As such, when it came to having attorney Marc Kadish, [etc.] repersent Plaintiff on this particular settlement agreement it was'nt with the thought in-mind that both cases would be consolidated. Moreover, that a settlement would be worked out with a fair assessment of the constitutional violation which occurred. Obviously this did not happen!!!
There can be no question as to the constitutional violation(s) that exist whereas Plaintiff was pad-locked in a cell with only one exit /one way out,,, with the cell located down a corridor with only one way to exit said corridor. Obviously the conditions just spoke of violates Illinois Fire Code.

    3. From the outset of senior and lead attorney "Marc Kadish" representation of Plaintiff Young's claim [Young v. Wexford] on his first visit to discuss same Mr. Kadish laid out his personal agenda as to the course of action he would proceed on to bring about a con-clusion to the claim. The visit inquestion took place on April 17th /20 /2 , at that time Mr. Kadish advised Plaintiff that he could get him from Stateville Correctional Center [which is a maximum sec-urity institution] to the Dixon Correctional Center [which is a medium security institution]; that he'd obtain Plaintiff some intermeddate medical treatment, "if Plaintiff would take the money off the table". In essence, if he would not request any financial compensation"... Plaintiff responded [no] and went on to make it clear that he would not change his mind concerning financial com-pensation. Regardless of that fact on the next two occasions when Plaintiff spoke with Mr. Kadish he continued his drum-beat advising Plaintiff of the very same things he could do if Plaintiff would take the monet off the table. Never mind the fact that Plaintiff has a statutory and constitutional right as an individual under the custody of the Illinois Department Of Corrections to receive medical treatment. (see 730 ILCS 5/3-7-2(d): the IDOC must provide every committed person with medical care; and 730 ILCS 5/1-1-2(c): The purpose of this code of corrections are to prevent arbitrary or oppressive treatment of persons adjudicated offenders or delin-quents; and restore offenders to useful citizenship.

[4]

As such, the IDOC was then [in the past]/is now obligated to prov-ide Plaintiff with adequate medical treatment, and, in a timely fashion. They were to prevent any arbitrary or oppresive treatment, therefore Plaintiff should not have had to endure some six to seven years of pain and suffering and be forced to file a civil complaint in order to have his medical issues addressed. And, at this point even after filing a complaint, having an attorney appo-inted to represent me concerning that complaint. Completing a settlement agreement, and, to this very day still not have my med-ical issues addressed is beyond not only myself [but anyone with any common sense comprehension]. How is it possible that anyone can believe that Mr. Kadish representation was infact in Plaintif-fs best interest... On his own accord [without Plaintiff's consent] pushed this equasion to the Defendants: an agreement of no monetary payment; a referral to be seen by an outside medical specialist [mind you, he was not pushing for total and complete medical treatment as he should have been; and lastly to have his medical hold lifted whereby he could request a transfer to a medium security institution [not that Plaintiff would automatically receive a tran-sfer as a condition of said settlement agreement].

    4. The most convincing inducement by Plaintiff's attorney(s) and what made Plaintiff feel compelled to agree to this settlement came in the form of a letter wherein Attorney Kathleen M. Przywara (Plaintiff's attorney) misrepresented the legal standing for the summary judgment phase of the proceedings to him. AS there were some two if not three separate motion(s) for summary judgment pending between both cases before the settlement conference was officially underway. What she explained was the standard for deliberate indi-fference and went on to stress that if he did not take the settlement he would not be able to previal pursuant to the deliberate indiff-erent standard on his claim. In otherwords, "take the settlement or nothing will be done for you at all".

    Civil claims are litigated in stages, the pending stage before the settlement conference begain was that of summary judgment. At that point the standard at issue was that of summary judgment: Summary judgment should be denied where there is evidence from which a reasonable jury could return a verdict for the Plaintiff. Moreover, There can be no dispute as to the applicable standard for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(c). Rule 56(c) provides unequivocally that summary judgment may be gr-anted <u>only</u> where the pleadings, depositions, answers to interroga-tories and addmissions on file, together with the affidavits, if any, show that there is no geniune issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317,322 (1986). The substantive law determines which facts are material. Anderson v. Liberty Lobby, Inc.,477 U.S. 242,248(1986). A genuine dispute about a material fact arises when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Harris v. Hardiman, 1988 Westlaw 116862 N.D Ill. 1988) quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 (1986).

[5]

(see Plaintiff's Exhibit-A, the same being the letter inquestion from attorney Kathleen M. Przywara, dated Aug. 29th/2014, to Plaintiff)

(A) There is an issue of material fact inquestion pursuant to this calim, and that is: whether Plaintiff has a serious medical condition which the defendants need to treat him for? A serious medical condition is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctors attention. Even elective treatment recommended by a physician but not necessary in a life or health saving sense may be constitutionally mandated upon a prisoners election.

On Sept. 3rd/2013, Doctor(s)/[Specialist] at the University Of Illinois Hospital diagnosed Plaintiff with the medical condition of "Dyspepsia". Dr. Balachandran pursuant to said diagnosis speci-fically ordered as medication "Miralax" along with a high fiber diet for Plaintiff. Dr. Balachandran of the U of I Hospital has had his orders totally ignored by the Defendants for to this very day Plaintiff has yet to receive the medication nor the high fiber diet ordered. The reason given is that the medication cost too much and the Stateville C.C. nor the Herny Hill C.C. where Plaintiff is now incarcerated provides a medical diet nor high fiber diet for inmates as a policy.

DYSPEPSIA: describes a condition in which the individual is complain-ing of pain and discomfort, usually in the upper part of the abdomen or the lower part of the front of the chest which may or may not be associated with other disturbances such as "heartburn, flatulence, or nausea. It may be due to a multiplicity of causes, such as: gastritis, peptic ulcer, hiatus hernia, cancer of the stomach, all of which involve the stomach. In some it may be due to disease of the gall-bladder or "PANCREAS" or it may be due to disease in some other part of the body such as -A- heart failure, uraemia, or diabetes mellitus. In all of these conditionsthe relief of the dyspepsia is dependent upon the treatment of the underlying cause.

Mind you, Plaintiffs claim as cited in his complaint concerns the medical condition of pancreatitis, and the same is one of the conditions cited as a reason for dyspepsia. (see Plaintiffs Exhibit-B, which is a paper exhibiting the definition of Dyspepsia!'

(B) On Dec. 11th/2013, Dr, balachandran wrote in Plaintiffs med-ical records that "the unclear etiology" study of the causes of disease.

[6]

5. On March 5th/2014, Plaintiff was diagnosed with internal hem-orrhoids, and further states: they are the likely source of the rectal bleeding. A polyp was found in the cecum and the test showed serrated-abenoma...
(A) On March [U. Of I. Hospital Doctor] Dr. Balachandran ordered hemorrhoid removal surgery, as well as a high fiber diet, along with the medication "Miralax". (Wexford has an official policy where-as hemorrhoid removal surgery will not be allowed inthat the same is considered cosmetic surgery in-nature.)

(B) On April 11th/2014, Plaintiff was diagnosed with having an Umbilical Hernia, also with a mild systemic disease, well as a bor-derline enlarged heart.

(C) On May 5th/2014, Dr. Obaisi and Dr. Garcia approved a follow-up visit for Plaintiff to the U. Of I. Hospital as opposed to abdominal pain, constipation and an abnormal liver function. But, Wexford's official policy is that an inmate can only have one medical issue addressed at one time. As such, todate, nothing has been done pursuant to Plaintiffs abnormal liver function/the systemic disease /nor the hernia.
(D) On June 26th/2014, Plaintiff was saw by a colon-rectal surgery consultant "Anders Mellgren MD". In his report he states: the patient has problems from the rectal area. We usually can manage most patients with banding, and further suggested that Plaintiff see one of his colleagues at a later date. (see Plaintiff's Exhibit-C, the same being a medical report from Dr. Obasisi)

(E) July 17th/2014, Vivek Chaudhry MD., Colon And Rectal Surgeon, discussed with Plaintiff and explained that "we need to fix the un-derlying problem of constipation prior to surgically fixing the hemorrhoids. That he would add colace and miralax daily, and, "R.T.C." in the next three months.

(F) On July 21st/2014, Dr. Obaisi informed me that Wexford made it clear to him that I would not be receiving the "Miralax" medic-ation originally order by the specialist from the U. of I. Hospital because Plaintiff would need take this medication for an extended period of time and or for the rest of his life, that the medication cost too much money.

6. Plaintiff's Exhibit-D, is a letter he received from Attorney Kathleen M. Przywara wherein she advised Plaintiff that she and Marc Kadish spoke with Judge Pallmeyer on the morning of August 4th/2014. That during said conversation Judge Pallmeyer asked if Plaintiff had been to the hospital regarding his candidacy for hem-orrhoid-removal surgery. She goes on to state that they informed Judge Pallmeyer that Plaintiff had been to the hospital twice on this account and that no surgery or other appointments appear to

be pending at this time. Judge Pallmeyer <u>agreed</u> that it was an appropriate time to schedule a settlement conference and we went to speak with Judge Mason.

The bottomline is, attorneys "Kadish & Przywara" did not only set-out to dupe the Plaintiff, tricking him into signing off on a settlement agreement they knew was not in his best interest. But, also to deceive this Honorable Court/Judge Pallmeyer in an effort to push/rush the case(s) towards a settlement agreement sooner than later. For said attorneys knew they were infact not being tr -uthful with Judge Pallmeyer pursuant to their August 4th/2014 con -versation inthat they knew Plaintiff had hemorrhoid removal sur- gery pending [moreover, that this surgery more than likely would not take pl -ace because of Wexfords official policy that hemorrhoid surgery will not be performed as it is considered cosmetic in nature]; they were also aware that given Plaintiffs medical condition as opposed to his having a hernia that he would more than likely be requesting surgery on that but also again that Wexford has an official policy that inmates will not receive surgery for hernias as they are con -sidered as cosmetic surgery(ies) as well; that Plaintiff would need to undergo further testing as to the actual cause of his medical condition of dyspepsia inthat the specialist from the U. of I. Hospital had yet to find the cause of same given his medical examinations to that point. We now no that the condition of dyspep -sia could be caused by pancreatitis, gall bladder disease, hiatus hernia, or cancer of the stomach --- all of whch are serious medical conditions which would require continual treatment over the longterm. (see Plaintiff's Exhibit(s) D-and-E; D-being a letter from attorney Przywara, dated Aug. 4th/2014, wherein she informs Plaintiff that she'd spoken with Judge Pallmeyer and explained that there were no other medical issues pending; Exhibit-E, is a medical report dated July 21st/2014, contradicting the statement -(s) Attorney Przywara made to Judge Pallmeyer inthat the report clearly states that Plaintiff is a good candidate for banding [which is a medical procedure which was and is still pending long after said attorney made statements to the court there were not) (MoreOver, See Plaintiff's Exhibit-H, the same being a Medical Report dated: 10/13/14)

7. The "Deliberate Indifference Standard" as same relates to Plaintiffs Eighth Amendment claim of "cruel and unusual punishment". Deliberate indifference to serious medical needs of prisoners con -stitutes the unneecssary and wanton infliction of pain proscribed by the Eighth Amendment. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

AS the Court noted in <u>Estelle</u>, several elementary principles establish the governments obligation to provide medical care for those whom it is punishing by incarceration.

[8]

(1) An inmate must rely on prison authorities to meet his medical needs since otherwise such needs will not be met. (2) Even where care is generally available to inmates, a denial of care to one inmate may result in pain and suffering which would serve no penolo-gical purpose. (3) Contemporary Standards Of Decency require nothing less than that the State provide medical care for prisoners. (see Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909(1976); Trop v. Dulles, 356 U.S. 86, 100-101(1958); Spicer v. Williams, 191 N.C. 487, 490, 132 S.E. 291, 293(1926)

Estelle sets out a two part test to determine if a medical claim exist: First, the prisoner must show that officials exhibited delib-erate indifference to his medical needs; Secondly, that the needs must be serious.

Hence, the Objective Component and the Subjective Component:

The Objective Component analysis is similar to the "serious medical needs" analysis. In other words, it is a analysis to see if the med-ical need is serious from a medical viewpoint, not a prisoners view point.

The Subjective Component analysis requires that the officials acted with a culpable state of mind. In other words, the officials must have known about the medical need and acted with deliberate indiff-erence to it.

A) Objective Component/in relation to the "Serious Medical Need Analysis" [a serious medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Even elective treatment recommended by a physician but not necessary in a life or health-saving sense may be constitu-tionally mandated upon a prisoners election] exist where this Pl-aintiff/Plaintiff Young on May 14th/2010, was informed by Defend-ant Zang that his pancreas had flared-up; that on June 8th/2010 Defendant Zang diagnosed Plaintiff with chronic pancreatitis. This diagnosis has been confirmed when this Court ordered that Plaintiff be examined by specialist doctors from the U. of I. Hospital/Medi-cal Center in Chicago on Sept. 3rd/2013, and thereafter diagnosed Plaintiff with dyspepsia. Dyspepsia can be caused by a multiplicity of causes, one of which is in-fact disease of the pancreas. Obvi-ously, the same constitutes a serious medical condition in-relation to the objective component. On March 5th/2014 Plaintiff was diagnosed with internal hemorrhoids and further states that they are the like ly source of his continual rectal bleeding; [a polyp was found in the cecum and the test showed serrated-abenoma]. Also in March/2014 Dr. Balachandran of the U. of I Medical Center ordered hemorrhoid removal surgery well as a high fiber diet, along with the medication "Miralax". On April 11th/2014, Plaintiff was diagnosed with having

[9]

Umbilical Hernia, also with mild systemic disease and a borderline enlarged heart. On May 5th/2014, Dr. Obais and Dr. Garcia approved Plaintiff to the U. of I. Medical Center for a follow-up visit pur-suant to abdominal pain, chronic constipation and an abnormal liver function. On June 26th/2014 colon-rectal surgery consultant "Anders Mellgren MD" medical report reads: the patient has problems from the rectal area. We usually can manage most patients with banding and further suggested, see one of his colleages at a later date. Plaintiff medical records of Feb. 25th/2008, show that Plaintiff lost some [30] pounds within [90] days. On April 2nd/2011, Plaintiff fell unconscious in the inmate dinning room at the Stateville Corr. ectional Center due to these self-same illnesses. (Again, the afore-mentioned medical issues are well documented and adhere to the obje-ctive component as same relates to Plaintiff having serious medical needs which mandate treatment.)

Pursuant to the Young v. Hardy [case], Case No. 12-C-5290, as same relates to the Objective Component analysis constitutes that the conduct of the Officials is adverse to social standards of decency; and in this particular instance same translates as Plain-tiff being housed in a cell where there exist only one eixt, on a gallery/down a corridor where there exist only one exit, and to further complicate matters --- in a cell thats pad-locked from the outside.

(B) The Subjective Component analysis exist where the Officials must have known about the medical need(s) and disregarded an excess-ive risk to an inmates health-or-safety; the same is liken unto deliberate indifference. This analysis exist in the present circum-stance where Plaintiff has continued to suffer from the aforement-ioned untreated medical condition(s) for some seven years before the filing of the complaint/during the course opf the litigation whereas said Defendants have totally ignored the Courts orders to adhere to providing Plaintiff with medical treatment/that after the completion of the settlement agreement said Defendants have continued to refuse to provide Plaintiff with any medical treatme-nt [of means] to his serious medical needs --- post diagnosis by some of the Defendants themselves, other IDOC Dostors, and Court ordered evaluations by Specialist from the U. of I. Medical Center of Chicago. AS such, said Defendants were fully aware of Plaintiffs serious medical need(s) and for close to a decade have flat-out re-fused to provide Plaintiff with the required medications/diet/surg-eries [etc.], The same without question adequately exhibits the subjective component and therefore constitutes deliberate indiffer-ence as to Young v. Wexford Health Sources, Inc., et al., 10-CV-8220.

Pursuant to the Young v. Hardy [case] Case No. 12-C-5591, as same relates to Subjective Component analysis where said Defendants knew that Plaintiffs very life was in danger when forcing him to be housed on a gallery/down a corridor and in a cell [both] together with only one exit out and having the celldoor locked with a pad-lock [understanding that the same violates the Illinois Fire Code] obviously constitutes deliberate indifference to Plaintiffs safety. In an attempt to cover-up their knowledge of and deliberate indiff-erence to same the Defendants ignored and violated the Federal Rules Of Civil Procedure when they refused to provide Plaintiff with his discovery request during the proceedings on the case, as Plaintiffs attorneys fell short when not pressing a motion for default conce-ning same.

(8) Plaintiff's Memorandum Of Law:

Lawrence Carty et al. v. Charles W. Turnbull et al., filed this case in the District Court of the Virgin Islands, Division of St. Thomas & St. John, citing the DEfendants willful failure to comply with Court orders and provisions of a 1994 settlement agreement to elim-inate unconstitutional jail conditions.

See Plaintiff's last Exhibit [Exhibit-H] which is a news paper article from the Chicago Tribune/Chicago Tribune Website: WWW.chicagotribune.com, dated Feb.1st/2012, by the Hon. Judge Milton Shadur of the U.S. District Court for the Northern District of Illinois, wherein he speaks of his personal perception concerning the character of one of the Defendants Dr. Parthasarathi Ghosh [who is also a Defendant in the Young case that is presently before the bar pursuant to this motion]. And I quote: Judge Milton Shadur noted in a separate case this summer that the number of law suits reaching his docket involving prisoners claims against Dr. Ghosh suggested the physician was a walking malpractice action who had spawned a litigation cottage industry. Martinez request to be seen by a physician at Stateville Correctional Center after vomiting blood, severe back pain and abdominal pain were truned down for at least two years, records show. IN 2006, Martinez had surgery to tre-at pain in his lower right back and later that year sought treat-ment for symptoms that included severe pain in his lower left back. He alleges that Ghosh perscribed pain medication and told staffers to ignore Martinez other sick-call requests, saying that Stateville had already spent enough money on his care.

A doctors presistence in a course of treatment known to be ineffect-ive, and his ban on providing the prisoner with pain medication or gastroscopy supported the argument that repeated refusalto unc-over or effectively treat his condition was a gratuitous cruelty; Collignon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998)

Greeno v. Daley, 414 F.3d 645, 654(7th Cir.2005) holding that Medical staffs obdurate refusal to change Prisoners treatment despite his reports that his medication was not working and his condition was in-fact worsening could constitute deliberate indifference.

Plaintiff Young's pain [chronic pain that is] presents a separate objectively serious condition (see Grieveson v. Anderson, 538 F.3d 763, 779 (7th Cir. 2008); Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)

Plaintiff Young has adequately alleged the subjective element of his claim as opposed to the analysis of deliberate indifference where the Defendants can not provide a reasonable response as to their lack of medical treatment and pain and suffering for close to ten years of complaints by this Plaintiff were blatantly inappropriate in the face of his chronic abdominal pain and the risk of his condition(s) worsening. The fact that as of this day Plaintiff has yet to be adequately diagnosed and treated. (see Roe v. Elyea, 631 F.3d 843, 857-58 ( 7th Cir. 2011); Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 830 (7th Cir. 2009); Reed v. McBride 178 F.3d 849, 852-53 (7th Cir 1999)

Physicians are obligated not to presist in ineffective treatment (see Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010); Johnson , 433 F.3d 433 F.3d at 1013; Greeno, 414 F.3d at 655

Delay in treating a condition that is painful even if not life-threating may well constitute deliberate indifference particularly for someone like Plaintiff Young who has continually complained of same for some ten years todate, and who will continue to suffer pain daily until his projected out date [see Arnett, 658 F.3d at 753; McGowan, 612 F.3d at 640; Grieveson, 538 F.3d at 779.

Dr. Ghosh and other medical professionals charged with providing medical care to inmates of the IDOC/Stateville C.C. regularly and systematically deprived Plaintiff/Mr. Heard of needed surgery for his hernia[s], ignoring sound medical practices in favor of cost saving measures implemented by IDOC and Wexford officials. For years Wexford in its capacity as a medical service provider to inmates in IDOC facilities has maintained a policy of not approving the surgical repair of a hernia unless the hernia is incarcerated or strangulated. In other words, until the hernia is lief-threatening. Under Wexfords policy, the cost of such surgical repair is out-weighed by the risk of any such surgery [this case is: Heard v. Wexford Health Sources, et al., Case No. 1:06-CV-00644]. This is yet another case where Dr. Ghosh is being sued again for denying an inmate healthcare as he ignored the competent professional medical advice of three other physicians well as the weight of medical literature recommending surgical repair of such hernias. [also see, Cotts v. Osafo, 692 F.3d 564 (7th Cir. 2012); and, Gonzalez v. Feinerman, 663 F.3d 311 (7th Cir. 2011)]

WHEREFORE, Pro Se.-Plaintiff Raymond Young, Pray, that this Honorable Court/Hon.Judge Rebecca R. Pallmeyer, at bar, grant him relief by ruling that Plaintiff Young has showed cause as to why the settlement agreement pursuant to the case(s) Young v. Wexford Health Sources, et al., No. 10-C-8220; and, Young v. Hardy, et al., No. 12-C-5591, should be modified, or, in the alternative be terminated and allow Plaintiff to proceed on both claims independently. Further Plaintiff sayeth not.

Respectfully Submitted

/s/ *Raymond Young*
RAYMOND YOUNG
Reg. No. N-32634
600 Linwood Rd.
P.O. Box 1700

```
STATE OF ILLINOIS  )
                   )  SS.
COUNTY OF KNOX     )
```

### AFFIDAVIT

    I, Pro Se.-Plaintiff Raymond Young, being first duly sworn upon oath, depose and do state that I am the Plaintiff in the attached motion requesting relief from judgment or order. That I have read said petition and that as to those matters therein stat-ed the same is true and correct in substance and in fact to the best of my knowledge and belief. Further Affiant sayeth not.

Dated: Dec. __16__/2014.

/s/ _Raymond Young_
       RAYMOND YOUNG

[14]